**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **MID-CONTINENT CASUALTY COMPANY** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| **V.** | § | **CIVIL CASE NO.: 1:25-cv-660** |
| | § | |
| **PEABODY INVESTMENTS CORPORATION D/B/A PEABODY ENERGY, INC** | § | |
| | § | |
| ***Defendant.*** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW, Plaintiff, Mid-Continent Casualty Company ("Mid-Continent") and files this Plaintiff's Original Complaint against Peabody Investments Corporation d/b/a Peabody Energy, Inc ("Peabody") and in support thereof will show the Court as follows:

## I.
## PARTIES

1. Plaintiff Mid-Continent is an Oklahoma corporation with its principal place of business in Oklahoma.

2. Defendant Peabody is a Delaware corporation with its principal place of business in Missouri.

## II.
## JURISDICTION AND VENUE

3. The jurisdiction of this Court exists under 28 U.S.C. §1332 of the Federal Rules of Civil Procedure based upon the diversity of citizenship of Plaintiff and Defendant, and the amount in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

4. Venue is properly maintained in this Court because it is the judicial district where a substantial part of the events giving rise to the claims occurred and in which the underlying state court lawsuit was filed.

## III.
## FACTS

**THE UNDERLYING SUIT**

5. Todd Lopes, wrongful death representative of the estate of David E. Warren, filed negligence and wrongful death causes of action against Peabody Energy, Inc., El Segundo Coal Company, LLC, Seth Puls, and William Jarrell in a lawsuit styled *Todd Lopes, as Wrongful Death Representative for the Estate of David E. Warren, III, deceased v. Peabody Energy, Inc. El Segundo Coal Company, LLC, Seth Puls, William Jarrell and Caterpillar, Inc*.; Case No. D-101-CV-2024-00910; State of New Mexico, County of Santa Fe, First Judicial District Court (the "Underlying Lawsuit").

6. In the Complaint for Damages Arising from Wrongful Death (the "Complaint"), Lopes alleges David E. Warren died in an incident taking place at El Segundo Mine, a coal mine purportedly owned by Peabody.

7. According to the Complaint, El Segundo Coal Company, a subsidiary of Peabody, sent Warren to repair a latch door on an industrial shovel around 1:30 a.m. on August 23, 2022. Allegedly, he arrived "along with [Brandon] Garcia and Scott Morlang" to complete the repair.

8. The Complaint alleges that Peabody created and implemented a practice of "blocking" the latch door open "with a single large plastic block", acting essentially as a doorstop to keep the latch door open.

9. In the Complaint, Lopes asserts that Warren and the repair crew followed Peabody's blocking procedure. He then alleges that Garcia did not ensure that the block was positioned correctly.

10. Warren, Garcia, and Morlang allegedly worked on the latch bar as the door was propped open. The Complaint indicates that after the work was complete, Warren stood at the edge as Garcia started to exit the dipper. Suddenly, Lopes contends, the "plastic block suddenly shot out with a bang". Lopes further claims the door closed on Warren, and the doors remained clamped around his waist.

11. After some time passed, the operator of the dipper allegedly lifted the dipper, using gravity to open the dipper so that Warren could be released. The Complaint indicates Warren then dropped to the ground, roughly seven feet below. Lopes claims no one called 911, but that a mine worker called a life flight company directly, purportedly avoiding reporting to local authorities. The mine allegedly provided incorrect coordinates to emergency responders. According to the Complaint, Warren died approximately an hour later, soon after the life flight landed.

12. The allegations against Peabody include: breach of duty of care, negligently failing to develop standard operating procedures for propping open the dipper door, negligently failing to ensure the mine employees were trained on safe procedures for propping open the dipper door, developing and implementing a dangerous procedure for propping open the dipper door, failing to ensure the dipper door was properly blocked before allowing the deceased to access the area, and failing to safely operate the mine.

13. The Complaint brings no causes of action against Apex.

14. The alleged damages include physical and emotional pain and suffering between the time of injury and death, lost earnings and lost earning capacity, the value of lose household

services, the value of life, damages from aggravating circumstances attending the death, and punitive damages.

**THE POLICY**

15. Mid-Continent insured Apex Solutions, LLC ("Apex") under policy 04-GL-001065885effective 8/24/2021 to 8/24/2022 under Commercial General Liability Policy form CG 0001 04/13, with limits of $2,000,000 general and products completed operations aggregate limits and each occurrence limit of $1,000,000 (the "Policy").

16. Under the ML 1081 form, the Policy offers additional insured coverage when the named insured has agreed by written "insured contract" to designate as an additional insured. This coverage is provided only with respect to liability caused, in whole or in part, by Apex's operations for an additional insured and limited to what is required by the "insured contract" and what is permitted by applicable law:

**SCHEDULE**

**Name of Person or Organization:**

**Any person or organization for whom the named insured has agreed by written "insured contract" to designate as an additional insured subject to all provisions and limitations of this policy.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability caused, in whole or in part, by your performance of ongoing operations for that insured. However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by written "insured contract", the insurance afforded to such additional insured will not be broader than that which you are required by the written "insured contract" to provide for such additional insured.

17. Under the ML 1426 form, the Policy offers additional insured coverage when the named insured has agreed by written "insured contract" to designate a party has an additional insured. This coverage is only provided in respect to liability caused, in whole or in part, by Apex's performance of its work.

**SCHEDULE**

**Name of Person or Organization:**

**Any person or organization for whom the named insured has agreed by written "insured contract" to designate as an additional insured, subject to all provisions and limitations of this policy.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** **WHO IS AN INSURED (Section II)** is amended to include as an additional insured, the person or organization shown in the Schedule, but only with respect to liability caused, in whole or in part, by your performance of "your work" for that additional insured whether on an ongoing operations or completed operations basis.

**B.** The Limit of Insurance afforded to such additional insured will not be greater than that which you are required by the written "insured contract" to provide for such additional insured or the applicable Limits of Insurance shown in the Declarations, whichever is less.

18. The CG 2426 form amends the definition of "insured contract" in the Policy. It includes within the definition of "insured contract" the part of any contract or agreement pertaining to Apex's business under which Apex assumes the tort liability of another party to pay for "bodily injury" to a third person or organization provided the "bodily injury" is caused, in whole or in part, by Apex. Such agreement is only considered an "insured contract" to the extent Apex's assumption of tort liability is permitted by law.

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

19. Peabody seeks coverage under the Policy through a contract between Peabody and Apex.

**THE MASTER SERVICE AGREEMENT**

20. There is a Master Service Contract between Peabody Energy and Apex whereby Apex agrees to provide "maintenance technician, welding, machining and alignment" services at El Segundo Mine (the "MSA").

21. El Segundo Mine is a mine containing wells and railways, both of which support the production of coal at the mine.

22. The contract contains the following indemnity provision:

> 10**. INDEMNITY**. Seller will (to the fullest extent permitted by applicable Law) indemnify, defend and hold harmless Buyer, its parents, subsidiaries, affiliates and related companies, and its and their respective officers, directors, agents, representative and employees, and each of its and their respective successors and assigns (the "Indemnified Parties") against any and all suits, claims, losses, demands, damages, liabilities, fines, administrative law actions, orders, costs and expenses (including reasonable attorneys' fees and other costs of defending any action and any and all costs and expenses incurred in enforcing this indemnity) (collectively, "Losses") which such Indemnified Parties may sustain or incur in connection with, or which may arise or result from (i) breach of any representation, warranty, or undertaking made by Seller in this Contract, or (ii) the performance, design, development, sale, use or delivery of the Services, whether the suit, claim or demand be based upon a theory of breach of contract or warranty, negligence, strict liability, other tort, infringement, or any other legal theory , or (iii) any suit, claim or demand under any environmental, transportation, health, safety or other Laws, rules, regulations or requirements caused by or resulting from the Services or any acts or omissions of Seller in the performance of this Contract. The foregoing duty to indemnify shall include, without limitation, the duty to defend the Indemnified Parties from and against any Losses regardless of whether such Losses are caused by (or alleged to have been caused by) the comparative, concurrent, or contributing negligence of any person or entity, including, without limitation, any of the Indemnified Parties, but it shall not include a duty to indemnify the Indemnified Parties for Losses to the extent such Losses are adjudicated in a final non-appealable order to be caused by the sole negligence of such Indemnified Parties. To the extent permitted by Law, as to its obligations to Buyer herein, Seller expressly and specifically waives all immunity that may be afforded to Seller under the workers' compensation Laws of any state or jurisdiction such that any worker's compensation claims paid by Seller to any of its employees shall not bar, limit, or otherwise restrict Seller's indemnification obligations.

***

23. The contract also contains an insurance provision located immediately below the indemnity provision. It provides the following:

> 11. INSURANCE. Seller shall obtain and continue in force, during the term of this Contract, at its own expense, the insurance coverages provided in Exhibit B.

24. Exhibit B indicates that proof of the following coverages must be provided to Peabody.

SUMMARY OF REQUIREMENTS[1]

| TYPE OF COVERAGE | MINIMUM LIMITS |
|---|---|
| **Commercial General Liability** (including premises, operations, products-completed operations, personal and advertising injury, and liability assumed under an insured contract) | $5,000,000 Combined Single Limit each occurrence. |
| **Commercial Auto Liability-Bodily Injury and Property Damage** (including owned, hired, and non-owned) | $1,000,000 Combined Single Limit each accident. |
| **Workers' Compensation and Occupational Disease Disability** (Note: For the states of Ohio, North Dakota, Washington, and Wyoming [where coverage is obtained from the state], attach a current copy of the relevant state's certificate of coverage). | The limits required by the laws of the state where the work is being performed. |
| **Employers' Liability** | $1,000,000 each accident and employee by disease. |
| **Additional Coverage** Additional coverage is required for designated contractors. Evidence of the coverage must be included on the Certificate of Insurance. | Professional Liability Insurance with limits of $2,500,000 (if any design and/or engineering work is performed as part of the project). |

25. Exhibit B further provides that "Seller shall name Peabody Investments Corp., its parents, subsidiaries, affiliates and related companies as Additional Insureds on the Commercial General…" policies, and that such commercial general policies "…will contain a waiver of subrogation by the insured and insurance company in favor of Peabody Investments Corp., its parents, subsidiaries, affiliates, and related companies."

## IV.
## COUNTS

### Count I – Declaratory Judgment – Mid-Continent has no duty to defend or indemnify Peabody as an additional insured because the indemnity provision in the MSA is void

26. Mid-Continent incorporates by reference the allegations set forth in paragraphs 1 through 25 and realleges those allegations as if fully set forth herein.

27. A justiciable controversy exists between the parties, as there is a bona fide dispute regarding the interpretation and enforcement of the Policy terms, which requires judicial resolution.

28. New Mexico's anti-indemnity statutes apply to the MSA between Apex and Peabody.

29. The MSA between Apex and Peabody obligates Apex to indemnify Peabody for its sole and/or concurrent negligence.

30. Apex's obligations to indemnify Peabody as required by the MSA are void under New Mexico's anti-indemnity statutes and therefore do not constitute an "insured contract" as defined by the Policy.

31. There is no "insured contract" as required for Peabody to obtain additional insured status under Policy.

32. Thus, Mid-Continent has no duty to insure, defend, or indemnify Peabody under the Policy.

**Count II - Declaratory Judgment – Mid-Continent has no duty to defend or indemnify Peabody as an additional insured because the insurance provision in the MSA is void**

33. Mid-Continent incorporates by reference the allegations set forth in paragraphs 1 through 25 and realleges those allegations as if fully set forth herein.

34. A justiciable controversy exists between the parties, as there is a bona fide dispute regarding the interpretation and enforcement of the Policy terms, which requires judicial resolution.

35. New Mexico's anti-indemnity statute(s) apply to the MSA between Apex and Peabody.

36. The MSA between Apex and Peabody obligates Apex to insure Peabody for its sole and/or concurrent negligence.

37. Apex's obligations to insure Peabody as required by the MSA are void under New Mexico's anti-indemnity statutes and therefore do not constitute an agreement to add Peabody as an additional insured through an "insured contract", as required by the Policy.

38. Peabody cannot qualify as an additional insured because it fails to meet the requirements to attain additional insured status under the Policy.

39. Thus, Mid-Continent has no duty to insure, defend, or indemnify Peabody under the Policy.

## V.
## CONCLUSION

**WHEREFORE**, Mid-Continent prays that this Court enter a judgment against Peabody for the following:

1. A declaration that the Policy does not provide additional insured coverage to Peabody for the Underlying Lawsuit;

2. A declaration that Mid-Continent has no duty or obligation to provide a defense to Peabody in the Underlying Lawsuit;

3. A declaration that Mid-Continent has no duty or obligation to indemnify Peabody in connection with the Underlying Lawsuit;

4. Mid-Continent's costs and attorneys' fees for bringing this action; and

5. All such other relief as this Court may deem to be just and appropriate.

Dated: July 11, 2025

Respectfully submitted,

By: */s/ R. Brent Cooper*

**R. BRENT COOPER,**
New Mexico Bar No. 153169

**COOPER & SCULLY, P.C.**
Founders Square
900 Jackson Street, Suite 100
Dallas TX 75202
214-712-9500 Office
214-712-9540 Fax
Email: Brent.Cooper@cooperscully.com